THE GEORGIA MASONIC MUTUAL LIFE INSURANCE COMPANY, plaintiff in error, *vs.* ANN E. WHITMAN *et al.*, defendants in error.

1. The Masonic Mutual Life Insurance Company, by its policy, certified that A B had paid $6 00, and was thereby made a member of the company, and entitled to the benefits of said association on his payment of $1 10 within ten days of receiving notice of the death of any member. By one of its by-laws, $6 00 was made the admission fee. By another, it was provided that each member should pay $1 10, on notice of the death of a member. By another, it was provided that it shall be the duty of the president to lay before the board of directors, at their regular monthly meetings, all proofs of the death of members, who shall pass upon the same, and by order of the board, authorize the president to draw his draft upon the treasurer, to be payable within sixty days after receiving notice of the death, for the sum of $1 00 for each member of the class or classes to which the deceased belonged, and the treasurer shall promptly, at the maturity of said draft, pay the sum specified therein to the person authorized to receive the same:

*Held*, that under these by-laws, the amount payable upon the death of any member is $1 00 for each person who was a member of the class of the deceased at the time of his death, and not $1 00 for each of such members as shall pay his assessment upon such death. Whether a proven custom, based on a different construction uniformly practiced

and known to the assured, would, as to such member, bind him to such construction. *Quære?*

2. A charge by the court to a jury, though illegal, is not a ground for a new trial, if it could in no way have affected the verdict to the injury of the party complaining.

Insurance. Contracts. Evidence. Custom. New trial. Immaterial error. Before C. B. Wooten, Esq., Judge *pro hac vice.* Bibb Superior Court. October Adjourned Term, 1873.

Ann E. Whitman, formerly Ann E. Shackleford, for herself, and as next friend for her children by George W. Shackleford, brought complaint against the Georgia Masonic Mutual Life Insurance Company, for $3,477 00, besides interest, alleging, in brief, as follows: On October 30th, 1867, said George W. Shackleford, being a master mason, and in good standing in his lodge, became a member of defendant, and complied with all the terms of membership imposed by the act of incorporation and the by-laws, until the time of his death. In consideration of $6 00 paid by said Shackleford, said defendant, on the day and year aforesaid, contracted with him to pay, upon his death, to his widow and dependent children the sum of $1 00 for every member of said company at that time, and within sixty days thereafter. Said Shackleford died on March 8th, 1870, leaving your petitioner as his widow, and the dependent children for whom she sues as next friend, of all of which due notice was given to the defendant. At the time of said Shackleford's death, there were three thousand four hundred and seventy-seven members of said corporation, by reason of which said defendant became liable to petitioners in the sum of $3,477 00, besides interest. The defendant refuses to pay, prays process, etc.

The defendant pleaded as follows: The defendant is not an insurance company in the common acceptation of said term, but a mutual aid association—a charitable institution, inaugurated by the members of a great brotherhood for the mutual benefit of their families. None are members except those who, in compliance with the by-laws, pay $1 00 into the

treasury upon the death of each and every member. In the case of George W. Shackleford the usual assessment notices were sent out immediately after the action of the board of directors upon receipt of proof of his death; and according to the returns of the various agents of defendant, there were, at that time, seventeen hundred and forty-seven members, making the amount due to the plaintiffs, $1,747 00. This sum has been long since paid to the plaintiff, Ann E. Whitman, who receipted for the same as "in full."

All the material facts presented by the testimony are embraced in the above head-note. The jury found for the plaintiffs $1,730 00, with interest from July 1st, 1870. The defendant moved for a new trial upon the following grounds, to-wit:

1st. Because the jury found contrary to evidence and contrary to law.

2d. Because the court erred in charging the jury, "That the by-laws, which were of force as the by-laws of this company at the time the deceased became a member, constituted the law of the contract between him and the company, and that any amendments made thereto after he became a member, and previous to his death, were not binding upon the plaintiffs, unless defendant could show that he, the said George W. Shackleford, assented to or ratified such amendments, either expressly or by legal implication."

3d. Because the court erred in its charge to the jury, as follows, viz: "This brings us to the main issue, and upon that I charge you, gentlemen, that under this contract, plaintiffs are entitled to recover a sum equal to $1 00 for each and every member of the company, of the class or classes to which deceased belonged, at the time of his death, and who, upon the death of any member, was liable to be assessed. And I charge you, that the term 'member' is not necessarily limited to those who responded to their assessments, made upon them upon the occasion of the death of George W. Shackleford. It embraces, for the purposes of this case, all those who were really members at the time of Shackleford's death,

whose names were on the rolls of the company, and who were known and recognized as members at *that* time. If, therefore, there were those who were really members of the company at the time of the death of Shackleford, whose names were on the rolls of the company, and who were known and recognized as members, and upon the death of any one of whom Shackleford would, up to the time of his death, have been liable to assessment, then, even though they may have subsequently lost their membership by non-payment of assessments, or from any other cause, all such, if any there be, are to be included in your calculation. The rights of the plaintiffs under this contract are co-extensive and commensurate with the obligations that rested upon Shackleford at the time of his death. It is a fair rule of estimation, therefore, to say that plaintiffs are entitled to recover the sum of $1 00 for each and every member, upon the death of whom Shackleford would, at that time, have been liable to assessment. Rights and obligations in such cases are reciprocal; and the proper criterion for estimation is not the number of members before that time, nor the number of members after that time, but the number of members at the time of the death of Shackleford. If, therefore, the plaintiffs have been paid the sum of $1 00 for each and every member belonging to said company at the time of the death of Shackleford, then I charge you that they are not entitled to recover, and you will find for the defendant. But if, on the other hand, plaintiffs have not been paid a sum equal to $1 00 for each and every such member, then I charge you that she would be entitled to recover the difference between the amount she has been paid already, and a sum equal to $1 00 for each and every member of said company belonging thereto, whose names were on the rolls of said company, and who were known and recognized as such members at the time of the death of Shackleford, and upon the death of any one of whom Shackleford, up to the time of his death, would have been liable to assessment."

4th. Because the court erred in refusing to give in charge the requests of defendant's counsel, as follows:

1st. "The plaintiff is only entitled to recover $1 00 for every member of the company. Under article VI., of the by-laws of the company, those who respond to assessments, and those *only*, are members."

2d. "Any member of the company may terminate his membership at will by failing to respond to his assessments; and if he fails, the company cannot collect from him the unpaid assessments, and is not liable to make them good."

3d. "The construction of a contract put upon it by one party, and known to be so understood by the other party, will govern; and if the jury believe, from the evidence, that the company construed the contract to mean that the member was only entitled to $1 00 for every member who responded to the assessments, and if Shackleford understood that this was the construction put upon the contract by the company, the plaintiff is not entitled to recover more than the assessments actually collected."

4th. "Under the charter, the company has no authority to draw upon its invested fund to make up the deficiencies in the collection of the assessments from the members, and this invested fund is not liable to be encroached upon for any such purpose."

The motion was overruled, and the defendant excepted.

SAMUEL D. IRVIN, by R. H. CLARK, for plaintiff in error.

LANIER & ANDERSON, for defendants.

McCAY, Judge.

1. Whilst we recognize the fact, that under the actual history of this organization as it has taken place, the rule we have felt compelled to adopt as the proper and inevitable construction of their charter and by-laws, is ruinous to the existence of the company; yet we suspect it was never dreamed that the loss of members by failure to pay would ever be so great as it was, in fact. It is only whilst the members have confidence in the management, and in the persistence of the

The Georgia Masonic, etc., Company *vs.* Whitman *et al.*

members in making their payments, that such a scheme as the present record discloses is possible at any time or on any terms. It is based mainly on the love of the members for the brotherhood, and not on any calculations based on the laws of life, since age and health, the prime factors in schemes of life insurance, are disregarded. However this may be, the very terms of the by-laws and charter make the number of paying members, at the date of the death, the measure of the amount due the family of the deceased. They are entitled to a draft, payable within sixty days after notice of the death, for the amount. This would be impossible if the amount was regulated by those who should pay the assessment made on the death. Had nothing untoward occurred so as to make the delinquents numerous, the company could have gone on a good while, new members taking the place of those dropping off under ordinary circumstances.' But when the defaulters are numerous, and, as seems to be the notion, any particular assessment voluntary, then the whole scheme is a failure; for, as it turns out, the more any one pays the less he gets. The scheme was faulty in its conception. It failed to provide for the very contingency that has happened, to-wit: a stampede among the members and a distrust of outsiders, preventing new accessions. No scheme of life insurance is reliable that does not always lay up safely enough to reinsure every member that does not have a reserve which, with the payments of its insured, will meet every policy as it falls in, and which could stop taking new members and still pay its losses as they occur.

2. The charge of the court was, in our judgment, wrong. No vital change has been made—at least, none that does not come within the scope of the right reserved. But we do not think, had this charge been left out, the verdict could have been different, and we feel constrained to affirm the judgment.

Judgment affirmed.